**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

BRIAN LINTON,

              Plaintiff,

        v.

NAADAM INC.,

              Defendant.

Civil Action No. 24-94-GBW

---

Jeffrey M. Carbino, PIERSON FERDINAND LLP, Wilmington, DE; Stephen G. Bresset, BRESSET & SANTORA, LLC, Honesdale, PA

      *Counsel for Plaintiff*

Alexis R. Gambale, PASHMAN STEIN WALDER HAYDEN, P.C., Wilmington, DE; Deanna Koestel, PASHMAN STEIN WALDER HAYDEN, P.C., New York, NY

      *Counsel for Defendant*

**MEMORANDUM OPINION**

April 30, 2026
Wilmington, Delaware

_____

GREGORY B. WILLIAMS<br>
U.S. DISTRICT JUDGE

On September 12, 2023, Plaintiff Brian Linton ("Plaintiff" or "Mr. Linton") initiated this action against Defendant Naadam Inc. ("Defendant" or "Naadam") in the United States District Court for the Eastern District of Pennsylvania. D.I. 1. The action was transferred to this Court on January 25, 2024. D.I. 21. On March 8, 2024, Defendant filed a motion to dismiss for failure to state a claim (D.I. 35), which the Court granted-in-part and denied-in-part (D.I. 54). Mr. Linton filed the operative Amended Complaint ("Plaintiff's Amended Complaint") on March 13, 2025, which includes eight counts: (1) "fraud," (2) "intentional misrepresentations," (3) "negligent misrepresentations," (4) "common law misappropriation," (5) "declaratory judgment," (6) "breach of fid[u]ciary duties," (7) "unjust enrichment," and (8) "conversion." D.I. 57 at 9-20. Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) ("Defendant's Motion") (D.I. 62), which has been fully briefed (D.I. 63; D.I. 67; D.I. 68). For the following reasons, the Court denies-in-part and grants-in-part Defendant's Motion.

## I.    BACKGROUND

The following are factual allegations from Plaintiff's Amended Complaint (D.I. 57) and are taken as true for the purpose of resolving Defendant's Motion.

In January 2007, Mr. Linton co-founded Sand Shack, LLC ("Sand Shack"). D.I. 57 ¶ 5. In May 2010, Sand Shack began doing business as United By Blue ("UBB"), a "unique retail and wholesale outlet for men's [clothing], women's clothing, and accessories." *Id.* ¶¶ 6-7. On January 11, 2022, Mr. Linton was approached by Brian Thorne, an equity investor of Naadam. *Id.* ¶ 12. On an unspecified date thereafter, Mr. Linton and Naadam reached an agreement for Naadam to

1

acquire a majority of Sand Shack, effectively reducing Mr. Linton's equity ownership in Sand Shack from 28% to 3.3%. *Id.* ¶¶ 16-17.

Following Naadam's acquisition of Sand Shack, "costs rose and sales dropped due to poor marketing schemes." *Id.* ¶ 19. Further, Naadam's "strategic errors and [] lack of capital" dramatically and adversely impacted Sand Shack's ability to operate successfully and maintain its inventory. *Id.* ¶¶ 20-21. As a result, Sand Shack could not sustain its lease payments on real property locations in Philadelphia. *Id.* ¶ 22. Beginning in early 2023, Naadam defaulted on its leases at two retail locations and its office location due to non-payment of rent. *Id.* ¶ 23.

On March 29, 2023, Naadam "terminated business operations and terminated [Mr.] Linton from his position." *Id.* ¶ 24. At the time of Mr. Linton's termination, Naadam held inventory for UBB in multiple warehouses and at an arrivals center for shipping containers in New York. *Id.* ¶ 28. Mr. Linton, who had provided personal guarantees prior to his termination, became responsible for Sand Shack's open and unpaid debts, including charges for the warehouses and tariffs in New York. *Id.* ¶¶ 25-26, 28-30. After closing UBB, Naadam re-branded Sand Shack's inventory and continued to sell it as property of Naadam. *Id.* ¶ 31.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6) Motion to Dismiss

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2

alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

In evaluating a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff." *Brady v. Static Media*, Civ. No. 23-1078-GBW, 2024 WL 4103719, at *2 (D. Del. Sep. 6, 2024). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420). The "movant bears the burden of demonstrating that the complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, C.A. No. 23-239 (KAJ), 2024 WL 2804703, at *1 (D. Del. May 31, 2024).

## III.   DISCUSSION

For the reasons below, the Court will not consider the Purchase Agreement or Operating Agreement. The Court holds that Mr. Linton has standing for Counts I-III but lacks standing for Counts IV-VIII. The Court further holds that Counts I-III of Plaintiff's Amended Complaint have been sufficiently pled.

### A.   The Court Will Not Consider Materials Outside the Pleadings

Naadam first asks the Court to consider an affidavit outside the pleadings in resolving its Motion. D.I. 64 (Declaration of Matthew Scanlan in Support of Defendant Naadam Inc.'s Motion

3

to Dismiss the Amended Complaint) (hereinafter, "Scanlan Declaration"). "[I]t is well established that a motion to dismiss may be decided based only on the 'complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 197 (3d Cir. 2019) (quoting *Mayer v. Belicheck*, 605 F.3d 223, 230 (3d Cir. 2010)); *see also U.S. ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 845 (3d Cir. 2014) ("[A] court may consider matters outside the pleadings in a factual challenge, but must take the complaint at face value and construe it as true in a facial challenge."). As a general rule, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Kickflip, Inc. v. Facebook, Inc.*, 999 F. Supp. 2d 677, 682 (D. Del. 2013) (quoting Fed. R. Civ. P. 12(d)). However, a plaintiff "cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Accordingly, "a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (emphasis omitted) (quoting *Burlington*, 114 F.3d at 1426 (internal citation omitted)); *see also Pension Ben. Guar. Corp. v. White Consul. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

The Scanlan Declaration includes the Purchase Agreement and the Operating Agreement (together, "Agreements") as exhibits. *See* D.I. 64-1, Ex. A; D.I. 64-2, Ex. B. The Purchase Agreement "sets forth the parties' respective investments and membership interests in Sand

4

Shack." D.I. 63 at 6. The Operating Agreement sets forth limitations on member liability and details the scope of fiduciary duties Naadam owed Mr. Linton. *Id.* at 6-7, 17; *see also* D.I. 64-2, Ex. B §§ 6.08(a), 12.01. Naadam reasons that the Court should consider the Agreements because Mr. Linton's "causes of action arise[] directly from Naadam's acquisition of, and membership interest in, Sand Shack." D.I. 63 at 6.

The Court declines to consider the Purchase Agreement because Naadam has not sufficiently demonstrated that said Agreement is central to the Complaint. Naadam claims that execution of the Purchase Agreement is central to Mr. Linton's allegations of harm because Mr. Linton repeatedly alleges that Naadam "induced [Linton] to enter into the [Purchase] [A]greement." D.I. 57 ¶¶ 64, 66, 75, 82, 105. Merely mentioning an agreement without relying on its contents, however, does not render that agreement central to the Complaint. *See Burlington,* 114 F.3d at 1426 ("[W]hat is critical is whether the claims in the complaint are based on an extrinsic document and not merely whether the extrinsic document was explicitly cited." (internal quotation marks omitted)). Although Naadam's acquisition of Sand Shack is indeed related to the events from which the Complaint arose, the terms of the purchase themselves are not at issue. Mr. Linton does not allege breach of the Purchase Agreement, and neither Mr. Linton nor Naadam have identified any provision of the Purchase Agreement in contention. *Cf. Pension Ben. Guar. Corp.,* 998 F.2d at 1196 (considering a purchase and sale agreement not attached to the complaint because the complaint was "based on this contract and describe[d] some of its terms"). Mr. Linton's allegations of harm instead arise from false representations that occurred prior to the Purchase Agreement's execution, as well as corporate wrongdoings unrelated to the terms of purchase. Thus, the Court will not consider the Purchase Agreement.

The Court also declines to consider the Operating Agreement. The duties laid out in that Agreement may be relevant to Mr. Linton's claims for common law misappropriation, declaratory judgment, breach of fiduciary duty, unjust enrichment, and conversion. However, as explained below, those claims all fail for lack of standing. *See infra* Section III.B.2. Thus, the Court need not decide whether the Operating Agreement is necessary to decide the sufficiency of Mr. Linton's claims.

**B.    Mr. Linton Has Standing for Counts I-III and Lacks Standing for Counts IV-VIII**

Naadam contends that Mr. Linton lacks prudential standing because the alleged injuries were inflicted upon Sand Shack as a corporate entity, whereas Mr. Linton himself has suffered only derivative injuries as a shareholder of Sand Shack. D.I. 63 at 7-9. A core principle of prudential standing is that a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). To sustain a direct action as a shareholder, the shareholder must demonstrate that he has "a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated." *Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990); *see also Willekes v. Serengeti Trading Co.*, 783 F. App'x 179, 183-84 (3d Cir. 2019) ("A shareholder may have standing 'to recover for injuries that were inflicted on him individually rather than on the corporation.'" (quoting *In re Kaplan*, 143 F.3d 807, 812 (3d Cir. 1998))).

Absent a direct injury, a shareholder must seek relief by pursuing a derivative action, which is an action on behalf of the corporation. Courts "generally prohibit[] shareholders from initiating [derivative actions] unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Potter v. Cozen & O'Connor*, 46 F.4th 148,

154 (3d Cir. 2022) (internal quotation marks omitted) (quoting *Franchise Tax Bd. of California v,* 493 U.S. at 336). To be excepted from this general prohibition against derivative actions, the shareholder must plead "with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). "If a party brings derivative claims without first making [a] demand, and demand is not excused, those claims must be dismissed." *Wise v. Biowish Techs., Inc.,* Civ. No. 18-676-RGA, 2019 WL 192876, at *3 (D. Del. Jan. 11, 2019) (quoting *Albert v. Alex. Brown Mgmt. Servs., Inc.,* No. Civ. A. 762-N, Civ. A. 763-N, 2005 WL 2130607, at *13 (Del. Ch. Aug. 26, 2005)).

The Court looks to the law of the state of incorporation to decide whether Mr. Linton's alleged injuries are derivative. *See In re Sunrise Sec. Litig.,* 916 F.2d 874, 879-82 (3d Cir. 1990) (applying the law of the state of incorporation); *In re Ressler,* 597 F. App'x 131, 135 n.5 (3d Cir. 2015) (same) (citing 12B Fletcher Cyclopedia of the Law of Corporations § 5911 (2014)). Since Sand Shack is incorporated in Delaware (*see* D.I. 63 at 8; D.I. 67 (not disputing)), the Court will apply Delaware law.

### 1.    Mr. Linton Has Standing for Counts I-III

Mr. Linton's claims for fraud, intentional misrepresentation, and negligent misrepresentation (D.I. 57, Counts I-III) are not derivative because Mr. Linton alleges harms completely "independent of [his] status as a shareholder." *Ressler,* 597 F. App'x at 136 (quoting 12B Fletcher Cyclopedia of the Law of Corporations § 5911 (2014)); *see also In re Activision Blizzard, Inc. S'holder Litig.,* 124 A.3d 1025, 1056 (Del. Ch. 2015) (explaining that a tort claim for fraud does not "arise out of the relationship between the stockholder and the corporation"). Mr. Linton's claims instead originate from his status as a seller of Sand Shack. Mr. Linton's role as a seller, not a shareholder, is what enabled him to engage in acquisition discussions with

Naadam and be a party to the agreement executing Naadam's acquisition of Sand Shack. As a seller, Mr. Linton suffered a unique and individual harm by relying on Naadam's allegedly false representations. *See Activision Blizzard*, 124 A.3d at 1056 (noting that fraud claims for a purchase or sale of shares are not derivative because they "arise[] out of the false representations made by the buyer or seller on which the counterparty relied to [his] detriment"). Accordingly, Mr. Linton's status as a shareholder is irrelevant to his claims of fraud and intentional and negligent misrepresentation, and Mr. Linton has standing to sustain an individual action on these claims.

### 2.     Mr. Linton Lacks Standing for Counts IV-VIII

For Mr. Linton's claims of common law misappropriation, declaratory judgment, breach of fiduciary duty, unjust enrichment, and conversion (D.I. 57, Counts IV-VIII), Mr. Linton alleges as harms (1) equity dilution, (2) enforcement of personal guarantees against Mr. Linton, and (3) a variety of injuries to Sand Shack (*see id.* ¶¶ 111-113, 119-22, 129, 131, 133, 136-37, 141). All the injuries that Mr. Linton alleges in Counts IV-VIII are derivative for three reasons.

*First*, equity dilution is derivative when the harm is merely "a decrease in the value of corporate stock." *Feldman v. Cutaia*, 951 A.2d 727, 734 (Del. 2008); *see also Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988); *Fares v. Lankau*, 953 F. Supp. 2d 524, 529 (D. Del. 2013). One of Mr. Linton's equity dilution allegations states that Naadam's concealment of financial weaknesses and refusal to manage the company "with regard to the fiduciary duty owed to Brian Linton as a minority shareholder . . . has permanently rendered the equity interest of Brian Linton valueless." D.I. 57 ¶ 113; *see also id.* ¶ 132. This allegation is a prototypical example of a decrease in the value of corporate stock. Thus, Mr. Linton's allegations of equity dilution are derivative.

*Second*, a harm caused by "a third party's wrongdoing which purportedly caused the corporation to enter bankruptcy, thereby triggering [a plaintiff's] guaranty" is derivative. *In re CD*

8

*Liquidation Co., LLC*, 462 B.R. 124, 133 (Bankr. D. Del. 2011); *see also Labovitz v. Washington Times Corp.*, 172 F.3d 897, 902 (D.C. Cir. 1999) (applying Delaware law and finding that "an injury flowing from the triggering of the guarantees" is a derivative injury). In Counts V-VII of his Amended Complaint, Mr. Linton alleges as harm the enforcement of personal guarantees by Hilldun Corporation and the Small Business Association. *See* D.I. 57 at 15-19. This fits squarely within the aforementioned propositions in *CD Liquidation* or *Labovitz*. In short, Mr. Linton alleges that Naadam's wrongdoing caused Sand Shack to default, which triggered Mr. Linton's guaranty. Any resulting harm is derivative.

*Third*, all remaining harms alleged in Counts IV-VIII are injuries to Sand Shack itself. For example, Mr. Linton alleges that Naadam "looted the corporate assets of Sand Shack" (*id.* ¶ 116), "refused to accept liability for the debts of Sand Shack" (*id.* ¶ 119), failed to "properly manage the business" (*id.* ¶ 127), failed to "preserve[,] maintain[,] and properly use the assets of Sand Shack" (*id.* ¶ 128), "liquidate[d] the inventory of Sand Shack" (*id.* ¶ 137), and "detained, misappropriated, wasted, abused, converted, depleted and/or diverted substantial assets and opportunities of Sand Shack" (*id.* ¶ 141). All of this conduct constitutes harm to Sand Shack as a corporate entity, not Mr. Linton. Mr. Linton's repeated references to Sand Shack as the direct object of these harms are telling. Importantly, Mr. Linton has not demonstrated that any "duty breached was owed to [him specifically] and that he . . . can prevail without showing an injury to the corporation." *Wise*, 2019 WL 192876, at *3 (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004)). Moreover, Mr. Linton's allegations that Naadam's conduct harmed him directly are entirely conclusory, and thus insufficient to sustain a direct action. *See, e.g.*, D.I. 57 ¶¶ 138, 143, 145.

For these reasons, Mr. Linton's claims of common law misappropriation, declaratory judgment, breach of fiduciary duty, unjust enrichment, and conversion are derivative. Since Mr. Linton has neither alleged that he made efforts to obtain corrective action from the directors, nor demonstrated that such a demand would be futile, Mr. Linton lacks standing for Counts IV-VIII.

## C.    Mr. Linton Has Pled Counts I-III With Sufficient Particularity

Having ruled that Mr. Linton has standing for Counts I-III, the Court now turns to the sufficiency of those claims under Federal Rules of Civil Procedure 9(b) and 12(b)(6). Counts I-III of Plaintiff's Amended Complaint sound in fraud and "must be stated with particularity." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 710 (3d Cir. 1996); *see also Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 n.3 (3d Cir. 2015) ("[C]laims for intentional and negligent misrepresentation . . . must be pled with sufficient particularity under Rule 9(b)."). To satisfy this heightened pleading standard, the complaint "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "[B]oilerplate and conclusory allegations will not suffice." *Burlington*, 114 F.3d at 1418 (citing *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 285 (3d Cir. 1992).

Mr. Linton has pled his fraud-based claims with sufficient particularity[1] because his Amended Complaint provides details about specific false representations made, as well as the dates

---

[1] The Court notes that two of Mr. Linton's allegations fail to state the contents of the alleged false representations. First, Plaintiff's Amended Complaint includes Exhibit A, which purports to show that Naadam "falsely claimed to have access to $20,000,000 in capital and capable management and marketing." D.I. 57 ¶ 72. However, Mr. Linton has not identified anything in Exhibit A that supports this allegation. Second, Mr. Linton attaches Exhibit B, which purports to show "projections for the period after the acquisition of Naadam" (*id.* ¶ 76), but he does not explain which projections constitute false representations. Attaching exhibits without any explanation as to how those exhibits substantiate a fraud allegation does not cure an otherwise deficient allegation. If the allegations ended there, the pleading would have been deficient.

and parties involved. For instance, Mr. Linton alleges the specific date of a meeting where Matthew Scanlan, Naadam's CEO, made false representations to Mr. Linton regarding specific amounts of Naadam's capital funds. *See* D.I. 57 ¶¶ 87-94. Mr. Linton also alleges the specific date of a meeting where Mr. Scanlan "orally represented that the Naadam wholesale business had, in its most recent year, gross sales of $60,000,000" (*id.* ¶ 84), but that the gross wholesale sales volume turned out to be "approximately $3,000,000" (*id.* ¶ 85). Naadam contends that Mr. Linton's allegations regarding gross sales are implausible because "[i]f true . . . , [they] cast serious doubt on whether [Mr. Linton's] purported reliance on Scanlan's statements can be considered 'justifiable.'" D.I. 63 at 13. This Court may not, at the motion to dismiss stage, resolve disputes regarding whether Mr. Linton's belief in Scanlan's alleged false representation was justifiable. *See Flora v. Cnty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015) ("When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), . . . [t]he district court may not make findings of fact and, insofar as there is a factual dispute, the court may not resolve it." (citing *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011), *as amended* (Oct. 7, 2011))). The Court's inquiry is merely whether, drawing all reasonable inferences in favor of Mr. Linton, Mr. Linton has plausibly pled fraud. The Court finds that Mr. Linton has plausibly pled fraud.

## IV. CONCLUSION

For the above reasons, the Court denies Defendant's Motion with respect to Counts I through III of Plaintiff's Amended Complaint. The Court grants Defendant's Motion with respect to Counts IV through VIII of Plaintiff's Amended Complaint. The Court will issue an Order consistent with this Memorandum Opinion.